IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CAROL THOMAS,

    Plaintiff,

v.

SAN FRANCISCO HOUSING AUTHORITY, et al.,

    Defendants.

No. 3:16-cv-03819-CRB

**ORDER GRANTING MOTION TO DISMISS**

Defendant San Francisco Housing Authority ("SFHA" or "Defendant") moves to dismiss pro se Plaintiff Carol Thomas's ("Thomas" or "Plaintiff") Second Amended Complaint ("SAC") (dkt. 17) pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Amended Motion to Dismiss ("MTD") (dkt. 30). Thomas alleges violations of Title VIII of the Civil Rights Act of 1968 (Fair Housing Act), as amended by the Fair Housing Act Amendments of 1988 ("FHA" or "Act"), based on: (1) racial discrimination; (2) retaliation; and (3) failure to reasonably accommodate her disability.[2] See generally SAC.

---

[1] The Second Amended Complaint is erroneously titled the "First Amended Complaint."

[2] The SAC alleges broad violations of "Title VI of the 1964 Civil Rights Act," which prohibits discrimination on the basis of race in programs and activities that receive federal funding, as well as Title VIII of the Civil Rights Act of 1968 (Fair Housing Act). See generally SAC. The SAC also includes a single, apparently erroneous reference to "Title VII." See SAC at 11. The substance of Thomas's three specific claims fall under the Fair Housing Act. See generally SAC (alleging violations

The Court dismisses with leave to amend the racial discrimination and retaliation claims because Thomas is proceeding pro se, and the deficiencies in her SAC appear curable by amendment. The Court dismisses the disability accommodation claim with prejudice because it is time-barred.

## I. BACKGROUND

### A. Factual Allegations

The gravamen of Thomas's claims is that from "January 2012 to the present she has been subject to disparate impact and disparate treatment" because SFHA "imposed certain terms and conditions upon [her] and offered more favorable terms and conditions to Asian Americans [sic]." SAC at 3. Thomas has been a resident at the Ping Yuen North ("PYN") building since December April 2009. Id. at 6. PYN was under the management and ownership of SFHA until March 9, 2015, when it transferred to subsidized housing under the management of Chinatown Community Development Center ("CCDC").[3] Id. at 2. It appears that CCDC has assumed ownership of PYN, because Thomas signed a new lease with CCDC on September 2, 2016. Id. at 10. However, Thomas alleges that "she has been barred from having that lease operative" because of back rent owed to SFHA. Id.

The SAC complains of miscalculation of monthly rent and inflated back rent, discriminatory treatment of African-American tenants, preferential treatment for Asian-Americans in terms of initial placement in public housing and the size of assigned rental units, refusal to transfer Thomas to a larger rental unit to accommodate her disability, inconvenience and nuisance related to the transition of PYN from SFHA to CCDC control, and damage to Thomas's private property. See generally id.; see also Opp'n (dkt. 31).

Prior to filing her complaint in district court, Thomas filed a "discrimination complaint" against SFHA with the United States Department of Housing and Urban Development ("HUD") on September 6, 2013. See SAC at 2. HUD dismissed that

---

of subsections "804(b)" for racial discrimination, "818" for retaliation, and "804(f)(3)(B)" for denial of reasonable accommodation, as amended 42 U.S.C. §§ 3601–3619).

[3] An exhibit to the SAC notes that as of March 9, 2015, CCDC was to "assume ownership" of PYN "in 1.5–2 years." See SAC Ex. A.

2

complaint with a "Determination of No Reasonable Cause on August 4, 2014." Opp'n Ex. D.[4] Thomas filed a "second HUD complaint [against SFHA] alleg[ing] one or more discriminatory housing practices" on June 29, 2016. SAC at 3. According to Thomas, the second HUD complaint alleges that SFHA violated the FHA "when [it] denied her request to transfer her to another unit on Ping Yuen North (PYN) property." SAC at 3. However, the second HUD complaint does not mention Thomas's request to transfer to another unit or challenge the denial of any such request, but instead alleges "Race and Retaliation" claims under the FHA.[5] See 1st Opp'n Ex. A at 11–12. It appears that the second HUD complaint is pending.

### B. Procedural History

On July 7, 2016, Thomas filed a complaint alleging violations of the FHA, and Title VI of the Civil Rights Act of 1964. Compl. (dkt. 1). On July 13, 2016, Magistrate Judge Laporte granted Thomas's request to proceed in forma pauperis ("IFP"). Order Re IFP (dkt. 6); see also IFP App. (dkt. 3). After Thomas declined magistrate jurisdiction, see Declination (dkt. 7), on July 19, 2016, Magistrate Judge Laporte recommended that the case be dismissed with leave to amend and directed that it be reassigned to a district court judge, Report and Recommendation (dkt. 8) at 1 ("R&R"). Accordingly, the case was reassigned to this Court. Order Reassigning Case (dkt. 9). The Court adopted Magistrate Judge Laporte's recommendation dismissing the case and giving Thomas leave to amend. Order Adopting R&R (dkt. 12).

---

[4] It appears that the Court may consider this exhibit because it is referenced (albeit obliquely) in the SAC. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); see also SAC at 10–11 (referencing "August 4, 2014" with regard to allegedly "false statements" defendant made to HUD to "close the [first] claim"). The Court suggests that Plaintiff attach and clearly mark any and all exhibits to her complaint in the first instance, rather than include additional material with her opposition papers.

[5] The Court may consider Exhibit A (the operative second complaint filed by Plaintiff with HUD's Regional Administrator on June 28, 2016, and officially filed on June 29, 2016) from Plaintiff's first opposition papers because the second HUD complaint is referenced in the SAC. See Tellabs, Inc., 551 U.S. at 322; see also SAC at 3 ("The second [HUD] complaint was officially filed on June 29, 2016").

3

On August 26, 2016, Thomas filed the First Amended Complaint ("FAC"). FAC (dkt. 14). The Court dismissed the FAC with leave to amend on September 15, 2016, finding that it "[did] not provide the requisite facts necessary for [the] Court to reasonably infer that Defendants are liable under" Thomas's claims, and that it "[did] not identify the legal basis for either claim." Order Dismissing With Leave to Amend (dkt. 15) at 3–5. Thomas filed the SAC on October 12, 2016. SAC. In response, Defendant SFHA filed a motion to dismiss pursuant to Rule 12(b)(6) on December 19, 2016. MTD (dkt. 25). On January 9, 2017, Thomas filed opposition briefing in response to SFHA's motion to dismiss. 1st Opp'n (dkt. 29). On January 10, 2017, SFHA filed an amended MTD in response to a Court order issued the same day that found procedural deficiencies in the original MTD. See Amended MTD (dkt. 30); see also Order re MTD (dkt. 28). Thomas filed opposition briefing in response to the amended MTD on February 1, 2017. Opp'n. SFHA filed a reply on February 10, 2017. Reply (dkt. 32).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A defendant may move to dismiss a complaint under Rule 12(b)(6), asserting that the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). For purposes of evaluating a motion to dismiss, a court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of L.A.; 828 F.2d 556, 561 (9th Cir. 1987).

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action,

4

supported by mere conclusory statements, do not suffice." Id.; see also Twombly, 550 U.S. at 555 (noting that a plaintiff must plead facts sufficient to "raise a right to relief above the speculative level.").

A complaint filed pro se "is to be liberally construed, and . . . however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). If a district court grants a motion to dismiss, it "should liberally allow a party to amend its pleading." Sonoma Cty. Ass'n of Retired Emps. v. Sonoma Cty., 708 F.3d 1109, 1117 (9th Cir. 2013) (citing Fed. R. Civ. P. 15(a)). A court "may decline to grant leave to amend only if there is strong evidence of undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the amendment, [or] futility of amendment, etc." Id. (internal quotation marks omitted).

## III. DISCUSSION

As noted above, Thomas alleges discriminatory conduct under the FHA. See generally SAC. The FHA prohibits "discriminat[ion] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The Act also prohibits discrimination based on denial of reasonable accommodations due to disability or "handicap." 42 U.S.C. § 3604(f)(3)(B); see also Giebeler v. M & B Associates, 343 F.3d 1143, 1146–47 (9th Cir. 2003) (noting that the Act "imposes an affirmative duty upon landlords to reasonably accommodate the needs of handicapped persons" with "regard to physical accommodations" and "administrative policies governing rentals."). The FHA defines a "handicap" as: "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h).

5

Under Section 3613(a)(1)(A) of the Act, a claimant may file a civil action in district court "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." The two year statute of limitations is tolled during any administrative proceeding regarding a complaint "based upon [a] discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(B).

Defendant SFHA moves to dismiss Thomas's claims for (A) racial discrimination; (B) retaliation; and (C) failure to reasonably accommodate her disability, arguing that she fails to sufficiently plead causes of action under the FHA. See generally MTD. Additionally, SFHA asserts that "insofar as [Thomas's] claims extend back more than two years from the filing of her original complaint," they are time-barred by the statute of limitations. Id. at 7.

### A. Racial Discrimination Claim

Under the FHA, a plaintiff can establish a "racial discrimination claim under a theory of disparate treatment or disparate impact." Harris v. Itzhaki, 183 F.3d 1043, 1051 (9th Cir. 1999) (citing Gamble v. City of Escondido, 104 F.3d 300, 304–05 (9th Cir. 1997) (noting that courts analyze FHA claims under the same framework as employment discrimination claims under Title VII of the Civil Rights Act)). The SAC employs both disparate impact and disparate treatment theories, alleging that SFHA discriminates against African-American tenants and favors Asian-American tenants. See SAC at 3–5. Specifically, Thomas claims that SHFA issues a disproportionate number of erroneous rental statements that inflate the amount of back rent owed to African-Americans, including herself. Id. at 4–5. Thomas further alleges that African-American "individuals were treated disadvantageously at PYN" because "[t]here are more African Americans [sic] that occupy efficiency units in PYN than Asians Americans [sic] although statistically" African-Americans constitute three percent of the resident population while Asian-Americans "occupy an average of ninety five [sic] percent of the units." Id. at 9.

#### 1. Disparate Treatment Theory

To establish a prima facie claim for disparate treatment, or "intentional discrimination," a plaintiff must demonstrate that: (1) she is a member of a protected class

1  under the FHA; and (2) "as a result of the defendant's discriminatory conduct, plaintiff has
2  suffered a distinct and palpable injury." Harris, 183 F.3d at 1051; see also Avenue 6E
3  Investments, LLC v. City of Yuma, Ariz., 818 F.3d 493, 502 (9th Cir. 2016) (noting that the
4  FHA "prohibits intentional discrimination—that is, disparate treatment."). In the
5  employment discrimination context, which entails the same analysis as FHA claims, see
6  Gamble, 104 F.3d at 304–05, this Court has found that a "plaintiff need not prove a prima
7  facie case" to survive a motion to dismiss under 12(b)(6), "but must still plead the general
8  disparate impact [or disparate treatment] elements" to make the claim "facially plausible,"[6]
9  see Borja-Valdes v. City and County of San Francisco, No. 3:14-cv-04168-CRB, 2015 WL
10 5522287, at *8 n.5 (N.D. Cal. Sept. 18, 2015).

11     Thomas is an African-American female alleging racial discrimination, thus, she falls
12 under the protection of the Act and satisfies the first element of a disparate treatment claim.
13 See 42 U.S.C. § 3604(b) (covering six protective classes: race, color, religion, sex, familial
14 status, and national origin); see also SAC at 1. However, Thomas fails to plead sufficient
15 facts to allow the Court to reasonably infer that SFHA intentionally discriminated against her
16 by subjecting her to differential treatment based on her race. Instead, the SAC offers only
17 conclusory statements that do not "raise a right to relief above the speculative level." See
18 Twombly, 550 U.S. at 555.

19     The first basis Thomas offers for her disparate treatment claim is that SFHA
20 disproportionately issues erroneous, inflated rental statements to African-American tenants
21 like herself. SAC at 4–5. She states that "a disproportionate number of African Americans
22 [sic] on SFHA PYN property have been subject to inaccurate income [sic] as opposed to the

---

[6] In Borja-Valdes, this Court found that the pleading standard set forth in Twombly and Iqbal had "implicitly overruled" Gilligan v. Jamco Dev. Corp., 108 F.3d 246 (9th Cir. 1997). 2015 WL 5522287, at *8 n.5. The Ninth Circuit found in Gilligan that the "district court erred in requiring the [plaintiff] to allege each element of a prima facie case under the FHA pleadings," and held instead that "the vitality of a fair housing complaint should be judged by the statutory elements of an FHA claim rather than the structure of the prima facie case." 108 F.3d at 250–51. Of note, post-Twombly, the Ninth Circuit applied the same standard that this Court espoused in Borja-Valdes, and upheld a district court's dismissal at the pleading stage of an FHA disparate impact claim where the complaint failed to allege the prima facie elements of the claim. See Gomez v. Quicken Loans, Inc., 629 F. App'x 799, 802 (9th Cir. 2015).

7

Asian residents." Id. at 4. Thomas alleges that SFHA issued inaccurate rental statements to African-American residents at PYN because "Owner/Management Agents were not granting exclusions and deductions to which African American [sic] families [were] entitled." Id. Thomas offers no factual allegations to support those statements, or any other allegations to suggest intentional discriminatory conduct or the existence of a facially discriminatory policy wherein SFHA treats African-Americans differently on the basis of their race. See Gomez, 629 F. App'x at 801–02 (noting that a claim for disparate treatment can be established where the complaint adequately pleads the existence of a "facially discriminatory policy.").

To qualify as "facially discriminatory, a policy must explicitly classif[y] or distinguish[ ] among persons by reference to criteria . . . which have been determined improper bases for differentiation." Id. at 801 (internal quotation marks omitted); see also Cmty. House, Inc. v. City of Boise, 490 F.3d 1041, 1048 (9th Cir. 2006) (noting that a "facially discriminatory policy is one which on its face applies less favorably to a protected group."). Thus, if Thomas alleged that SFHA applied a different standard to calculate the rent of African-Americans as opposed to other racial groups, such a policy—taken as true—would constitute a facially discriminatory policy sufficient to plead a claim of disparate treatment. See Gomez, 629 F. App'x at 801–02 (finding that plaintiff sufficiently pled a disparate treatment claim where the complaint adequately alleged the existence of a "facially discriminatory policy."). However, Thomas fails to plead any facts giving rise to a plausible inference that such a policy exists, and instead offers only the conclusory allegations noted above regarding African-American tenants. Furthermore, Thomas offers only conclusory, speculative statements regarding her personal rental statements. See infra pp. 12–13.[7]

The second basis Thomas offers for her disparate treatment claim is that African-American tenants occupy efficiency units in greater numbers than Asian-Americans, even though Asian-Americans comprise ninety-five percent of the resident population at PYN.

---

[7] Because Thomas's allegations regarding her personal rental statements overlap with the allegations in her retaliation claim, those allegations are discussed in section (B) below.

8

See SAC at 9. Thomas fails, however, to allege any conduct undertaken by SFHA to deny qualifying African-American tenants from occupying one-bedroom units. Furthermore, even taken as true, the allegation that more African-Americans occupy efficiency units than do Asian-Americans fails to give rise to a reasonable inference of intentional discriminatory conduct because Thomas fails to specify that <u>single</u> African-American tenants, like herself, are refused one-bedroom units in favor of <u>single</u> Asian-American tenants. Beyond her conclusory statements, Thomas offers no other plausible allegations that would allow the Court to infer that she was personally denied transfer to a one-bedroom unit on the basis of her race.

### 2. Disparate Impact Theory

To state a claim for disparate impact under the FHA, a plaintiff must plead: "(1) the existence of outwardly neutral practices; (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices; and (3) facts demonstrating a causal connection between the specific challenged practice or policy and the alleged disparate impact." <u>Hernandez v. Sutter West Capital</u>, No. C 09-03658 CRB, 2010 WL 3385046, at *3 (N.D. Cal. Aug. 26, 2010) (citing <u>Pfaff v. U.S. Dept. of Housing and Urban Dev.</u>, 88 F.3d 739, 745 (9th Cir. 1990)). As noted above, a plaintiff need not prove the prima facie elements to survive a motion to dismiss, but must plead the general elements to make a claim facially plausible. See <u>Borja-Valdes</u>, 2015 WL 5522287, at *8 n.5.

It is unclear from the SAC how Thomas's allegations fit under a theory of disparate impact because she does not expressly state a claim under that theory, but instead merely alleges "that she has been subject to disparate impact and disparate treatment." See SAC at 3. Thus, the Court will address the only outwardly neutral practice implicated by the allegations in the SAC—the issuance of rental statements.[8]

---

[8] The other basis of this claim—that SFHA houses more African-Americans in efficiency units than it does Asian-Americans—is not a neutral policy as pled.

9

1    SFHA's policy of issuing rental statements is an outwardly neutral practice, but
2 Thomas's allegation of a "disproportionate impact" on herself and other African-American
3 tenants concerns <u>erroneous</u> rental statements.  Thomas has not pled that SFHA applied a
4 facially neutral, uniform standard of calculating rent that resulted in a  disproportionate
5 number of erroneous rental statements for African-American tenants.  <u>See</u> <u>Gomez</u>, 629 F.
6 App'x. at 802 (noting that a plaintiff "need not state the precise contours of [the defendant's]
7 policy at the pleading stage, but [s]he must allege how the challenged policy could be
8 facially neutral.").  Instead, Thomas's allegations suggest that SFHA knowingly refused to
9 "grant[ ] exclusions and deductions [in rent] to which African American [sic] resident
10 families are entitled," resulting in inaccurate rental statements.  <u>See</u> SAC at 4.  In support of
11 her contention, Thomas alleges that "[m]any African Americans [sic] claimed that records
12 were inaccurate[.]"  <u>Id.</u>  Simply put, Thomas fails to sufficiently plead how issuing erroneous
13 rental statements constitutes a "facially neutral act" for purposes of stating a disparate impact
14 claim.  <u>See</u> <u>Gomez</u>, 629 F. App'x. at 802 (finding proper the dismissal of a disparate impact
15 claim at the pleading stage where plaintiff failed to "allege how the challenged policy could
16 be facially neutral.").  Furthermore, her allegations regarding the disproportionate impact on
17 African-American residents are wholly conclusory and unsupported by any factual
18 allegations.

19    **B.    Retaliation Claim**

20    Under the FHA, it is "unlawful to coerce, intimidate, threaten, or interfere with any
21 person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, . . .
22 any right granted or protected" by the FHA.  42 U.S.C. § 3617.  To state a claim for
23 retaliation under the FHA, a plaintiff must show that: (1) she engaged in protected activity;
24 (2) the defendant subjected her to an adverse action; and (3) "a causal link exists between the
25 protected activity and the adverse action."  <u>Walker v. City of Lakewood</u>, 272 F.3d 1114,
26 1128 (9th Cir. 2001).

27    Thomas alleges that SFHA retaliated against her after she filed her first HUD
28 complaint in September 2013, which asserted violations of the FHA.  SAC at 9–11.  Filing a

10

1 housing discrimination complaint with a governmental agency pursuant to the FHA is
2 protected activity under the Act.  See Sturm v. Davlyn Investments, Inc., No. CV
3 12-07305 DMG, 2014 WL 2599903, at *6 (C.D. Cal. Jan. 27, 2014) (noting that even
4 "informal complaints of race discrimination and requests for disability accommodations are
5 protected activities under the FHA.").  However, the specific allegations in the SAC fail to
6 plausibly demonstrate that SFHA subjected Thomas to an adverse action following the HUD
7 complaint, or that the action alleged was causally related to that complaint.

8      Thomas alleges that, as a result of the HUD complaint, SHFA damaged her
9 uninstalled carpet during a routine housing inspection, and continues to charge her inflated
10 back rent.[9]  SAC at 9–11.  Like her allegations regarding disparate impact and treatment,
11 Thomas's allegations regarding retaliation are conclusory and fail to make her claim facially
12 plausible.

13      As to the carpet, Thomas fails to specify when (or even to what extent) her carpet was
14 damaged, and only notes that it occurred "during the most recent annual inspection of her
15 unit."  See SAC at 9.  The omission of an exact date is especially critical given that SFHA
16 relinquished management responsibilities of PYN to CCDC in March 2015, and Thomas
17 states that she signed a new lease with CCDC in September 2016.  Id. at 2, 10; see also id. at
18 Ex. A (noting that as of March 9, 2015, CCDC was to "assume ownership" of PYN "in 1.5–2
19 years.").  In other words, Thomas fails to plead facts giving rise to an inference that
20 Defendant SFHA damaged her carpet; instead, it appears that her unit was under CCDC's
21 management, and possibly ownership, at the time of the alleged damage.[10]

---

[9] Thomas argues in her opposition brief that the "most recent adverse action is a 2017 notice of eviction/quit." Opp'n at 10. However, this allegation is not referenced in the SAC, and therefore may not be considered "[i]n determining the propriety of a Rule 12(b)(6) dismissal." See Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (noting that "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). Instead, "[f]acts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice." Id.

[10] It is also not clear how the alleged damage to Thomas's carpet is connected to the September 2013 HUD complaint, or whether the scope of the damage rises to the level of retaliation.

11

As to Thomas's allegedly erroneous back rent, it is similarly deficient to support her retaliation claim. The SAC alleges that SFHA "retaliated against [Thomas] for filing a fair housing complaint by placing inaccurate rent amount [sic] on her statements." Id. at 4. However, the SAC notes that Thomas "attended an informal grievance hearing . . . on 1/16/13" regarding her rental statements, and also "attended a formal grievance . . . on 7/19/10 regarding purported errors on her rent statements." Id. at 10. Those dates are before Thomas filed her first HUD complaint in September 2013. Thus, they do not support her retaliation claim.

Thomas acknowledges that the initial discrepancy with her back rent "was cured" following the formal grievance hearing on July 19, 2010, but alleges that the "negative amount reappeared" after she filed her HUD claim in 2013. Id. However, Thomas undermines that allegation by submitting an exhibit regarding the erroneous back rent—ostensibly from the HUD investigation into her 2013 claim—that states, in part: "[T]he Director of Public Housing Operations stated that the issue was the result of a computer error. According to documentary evidence, during the investigation[,] the SFHA corrected the Complainant's rent ledger to remove money erroneously credited to her account, and explained . . . that it had made the correction and that she owed unpaid rent for seven months."[11] See Opp'n Ex. D (emphasis added). Thomas does not allege that she settled that debt.

As to SFHA retaliating against Thomas by "adding inaccurate amounts of rent debt" following HUD's dismissal of her complaint in August 2014, it is purely conclusory and does not give rise to a reasonable inference that SFHA acted in retaliation for the HUD complaint. See SAC at 4. SFHA issued a rental statement indicating that as of September 1, 2016, Thomas owed $3,045 in back rent. Id. at Ex. C. Beyond Thomas's conclusory allegation, there is no basis to infer that the amount of back rent does not reflect an accurate

---

[11] As noted above, the Court takes judicial notice of this exhibit because it appears to be referenced in the SAC. Supra, note 4; see also SAC at 5 (quoting a "HUD evaluation" wherein SFHA allegedly "'indicated that [Thomas] was thankful for the correction,'" and stating (erroneously) that "page 7 of the HUD evaluation" was attached to the SAC); SAC at 10 (alleging that "defendant claimed to HUD during the investigation that they corrected the incorrect statements manually.").

12

1 amount that includes the "unpaid rent for seven months" noted above. In fact, Thomas states
2 that she "received rental statements with the <u>ongoing incremental increases</u> showing a
3 balance due on the stub for the rental amount around $3,000.00." Id. at 4 (emphasis added).
4 Thomas does not allege that she has ever paid her back rent; thus, it is reasonable to infer that
5 the "ongoing incremental increases" in the rental statements reflect Thomas's continued
6 failure to pay her rent.

### C. Disability Claim

Thomas alleges that SFHA failed to reasonably accommodate her disability by refusing her request to transfer from a studio apartment to a one-bedroom unit, in violation of 42 U.S.C. § 3604(f)(3)(B). See SAC at 6–9. A claim under the FHA based on failure to accommodate a disability requires the Plaintiff to demonstrate that: (1) she suffers from a disability as defined by the Act; (2) Defendant knew or reasonably should have known of the disability; (3) accommodation of the disability "may be necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; and (4) [D]efendant[ ] refused to make such accommodation." Giebeler, 343 F.3d at 1147.

#### 1. No failure to state a claim

Thomas alleges that she suffers from post traumatic stress disorder ("PTSD") after being victimized in an assault in July 2011. SAC at 6. She states that her condition is an "indefinite disability, . . . and one of the symptoms is claustrophobia."[12] Id. at 6–7. Furthermore, she alleges that her disability "is a threat to her life, health and safety," and that "she received her first disability payment"—ostensibly for her PTSD—from the "state Employment Development Department for Disability" in January 15, 2012.[13] Id. A letter from San Francisco State University dated December 19, 2012, references an assault "in

---

[12] Thomas also alleges that "[t]he disability may be considered an emergency due to the high percentage of suicide rates among those who experience PTSD symptoms." SAC at 8. However, Thomas does not specifically allege that she personally suffers from suicidal ideation.

[13] The SAC does not allege that Thomas is still in receipt of disability compensation. Additionally, Thomas does not definitively state that she has ever received a clinical diagnosis of PTSD. However, she does state that "[i]n order to receive disability compensation from EDD an applicant must submit all information regarding a physician and verification is completed before issuing payment." See SAC at 7.

13

August of 2011" and states that Thomas "was followed for a period [by a] psychiatrist for post traumatic stress disorder." Opp'n Ex. A. The letter also notes that Thomas "has had difficult[y] concentrating, and some trouble with her memory." Id. Thomas alleges that she "submitted verification of an indefinite disability to [SFHA]" to facilitate her request for transfer. Id. at 7.

The SAC specifies two instances where Thomas requested a transfer to a larger unit and was denied—a written request in January 2012 and a face-to-face meeting with an SFHA employee in June 2013. SAC at 6–8. The SAC alleges: "According to SFHA documentary evidence, [Thomas's written] transfer application request stated: I have been eligible for a one bedroom for three years and [am] in need of more space due to psychological reasons after experiencing an assault." Id. at 6. According to Thomas, she "submitted several documents" to SFHA staff members to "substantiate her claimed need for a reasonable accommodation" based on her PTSD, but SFHA ultimately refused her request. Id. at 7. Thomas alleges that her request was reasonable because it "did not impose undue financial or administrative burdens on the SFHA nor did it constitute fundamental alteration of the program." Id. at 8. Thomas also alleges that during the meeting in June 2013, she asked an SFHA employee to hold a one-bedroom unit that was being vacated by "female Asian American [sic]" while Thomas "underwent four psychiatric visits over a span of a month." Id. at 7–8. Furthermore, she alleges that "[a]ccording to documentary evidence that was given to HUD and an investigation interview with the SFHA Director of Client Placement, six one-bedroom units at the subject property were rented between January 18, 2012 and December 5, 2013, and they went to Asian Americans [sic]." Id. at 8–9.

Based on the allegations in the SAC, Thomas's claim is facially plausible because she has sufficiently pled the general elements of a prima facie claim for failure to accommodate under the FHA. First, the Defendant concedes that "PTSD constitutes a mental impairment which will impose a limitation on a major life activity." MTD at 6 (citing 29 C.F.R. § 1630.2(j)(3)(ii)). Second, Thomas alleges that she submitted documentation sufficient to put SFHA on notice that she suffers from PTSD, and that moving to a larger unit might have

14

1 been necessary to afford her an equal opportunity to use and enjoy the dwelling.  See SAC at
2 7.  Finally, SFHA denied her request on two specific occasions.  Id. at 6–8.  Thomas's claim
3 is facially plausible.  However, the claim is barred by the statute of limitations.

### 2. Statute of Limitations Under 42 U.S.C. § 3613

A defendant may raise a statute of limitations in a 12(b)(6) motion to dismiss provided that the basis for the argument appears on the face of the complaint and any judicially noticeable materials.  See Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980).  Here, SFHA notes that "insofar as [Thomas's] claims extend back more than two years from the filing of the original complaint, [on] July 7, 2016, they are barred by the applicable statute of limitations."  MTD at 7 (citing 42 U.S.C. § 3613).  With respect to the disability accommodation claim, it appears SFHA is correct and the claim is untimely.[14]

As noted above, a plaintiff must raise a claim under the FHA within two years of "the occurrence or the termination of an alleged discriminatory housing practice."  42 U.S.C. § 3613(a)(1)(A).  The statute of limitations is tolled during an administrative proceeding regarding a complaint "based upon [a] discriminatory housing practice."  42 U.S.C. § 3613(a)(1)(B).  Here, the SAC alleges that the last occurrence of a failure to accommodate occurred in "June 2013."  See SAC at 7–8.  Thomas filed her first HUD complaint three months later, on September 6, 2013.  Id. at 2.  Thus, following the resolution of her HUD claim, Thomas had twenty-one months remaining with which to file a cause of action in district court.  HUD dismissed the complaint on August 4, 2014.  Opp'n Ex. D.  Therefore, Thomas had until May 2016 (twenty-one months from August 2014) to file her claim.  She did not do so until July 7, 2016.  As a result, the claim is barred by the two-year statute of limitations under Section 3613(a).[15]

---

[14] The racial discrimination and retaliation claims appear timely because both claims rely in part on allegedly inflated rent statements with "ongoing incremental increases," and the SAC includes a rental statement from September 1, 2016 showing a balance due of "$3045.00."  See SAC at 4, Ex. C.  Thus, the conduct underlying both claims is within the two year statute of limitations.

[15] Thomas's second HUD complaint, filed in June 2016, contains no new allegations related to her disability.  See 1st Opp'n Ex. A at 11–12.  As noted above, the Court takes judicial notice of the operative second complaint because it is referenced in the SAC.  See supra, note 5; see also SAC at 3.

15

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to dismiss WITH LEAVE TO AMEND the claims of racial discrimination and retaliation only, because they appear remediable by amendment. The Court GRANTS the motion to dismiss the disability accommodation claim WITH PREJUDICE, because it is untimely. Thomas must amend within thirty (30) days of this Order. Failure to do so could result in dismissal with prejudice.

**IT IS SO ORDERED.**

Dated: March 6, 2017

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE